FILED
U.S. DISTRICT COURT
DISTRICT OF WYOMING

2018 JUL 11  PM 1:44

STEPHAN HARRIS, CLERK
CHEYENNE

Mark A. Klaassen
United States Attorney
Nicholas Vassallo (WY Bar #5-2443)
Assistant United States Attorney
United States Attorney's Office
P.O. Box 668
Cheyenne, WY  82003-0668
Telephone: 307-772-2124
nick.vassallo@usdoj.gov

Danielle R. Voorhees (CO Bar #35929)
Attorney for Plaintiff
Securities and Exchange Commission
Denver Regional Office
1961 Stout Street, Suite 1700
Denver, Colorado 80294
Telephone: (303) 844-1000
voorheesd@sec.gov
(*Pro hac vice pending*)

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| UNITED STATES SECURITIES AND EXCHANGE COMMISSION, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EDWARD A. YOUNG and GUARDIANS TRUSTEE, LLC, )<br>)<br>Defendants. ) | Civil Case No. 18-CV- 115 - S |

## COMPLAINT

Plaintiff United States Securities and Exchange Commission ("Commission" or "SEC")

alleges as follows against Defendants Edward A. Young ("Young") and Guardians Trustee, LLC

("Guardians Trustee") (collectively, "Defendants").

## I.    SUMMARY

1.      This SEC enforcement action involves a securities fraud directed primarily at Asian-American and Asian Christians, and perpetrated by Young and his wholly-owned entity, Guardians Trustee.

2.      From approximately November 2016 through February 2018, Defendants promised potential investors, who were members of an online ministry, 400% returns through the operation of a supposed "Private Banking Facility" ("PBF"). Defendants raised at least $170,000 from ten investors, many of them elderly, for the PBF program using a website (www.PerfectLight.us), in-person information sessions, and other offering materials.

3.      When soliciting investors, Defendants used complex and confusing language to misrepresent the operation and safety of the PBF program, as well as their use of investor funds. In fact, the PBF program had little substance and never generated profits. Investors lost all of their money.

4.      Defendants misappropriated investors' funds. They used the bulk of the money to pay Young's personal expenses and the child support of another individual, as well as to fund a separate entity controlled by that individual.

5.      Defendants also never disclosed to investors Young's criminal and disciplinary history, including past sanctions against him for fraud and theft, despite statements on the Guardians Trustee website touting Young's industry background.

6.      The interests Defendants offered were investment contracts, which are securities. Defendants also improperly failed to register their securities offering.

7.      As a result of the conduct described herein, Defendants Young and Guardians Trustee violated the antifraud and registration provisions of the federal securities laws.

Specifically, Defendants made materially misleading statements and omissions, and thus violated, and unless restrained and enjoined will continue to violate, Section 17(a)(2) of the Securities Act of 1933 [15 U.S.C. § 77q(a)(2)], Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. § 78j(b)], and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].  They also engaged in fraudulent acts, practices, courses of business, and a scheme to defraud, and thus violated, and unless restrained and enjoined will continue to violate, Section 17(a)(1) and (3) of the Securities Act [15 U.S.C. § 77q(a)(1) and (3)], Section 10(b) of the Exchange Act, and Rule 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5(a) and (c)].  By selling securities in unregistered transactions, Defendants violated, and unless restrained and enjoined will continue to violate, Section 5(a) and (c) of the Securities Act [15 U.S.C. §§ 77e(a) and (c)].

## II.     JURISDICTION AND VENUE

8.      The Court has jurisdiction pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21(e), and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and (e) and 78aa].  The Defendants, directly or indirectly, made use of the means or instrumentalities of interstate commerce, or of the mails, or the means or instruments of transportation or communication in interstate commerce, in connection with the acts, practices, and courses of business set forth in this Complaint.

9.      Venue lies in this Court pursuant to 15 U.S.C. §§ 77u(a) and 78aa and 28 U.S.C. § 1391(b)(2).  Defendant Young resides in Cheyenne, Wyoming.  Defendant Guardians Trustee is a Wyoming limited liability company with its principal place of business in Cheyenne, Wyoming.  In addition, many of the acts and practices described in this Complaint occurred in the District of Wyoming.

### III.   DEFENDANTS

10.     **Edward A. Young**, age 73, is a resident of Cheyenne, Wyoming.  He is the
principal and sole operator of Guardians Trustee.  Young drafted and disseminated the
information contained on www.PerfectLight.us, as well as all other written information about the
PBF program.

11.     **Guardians Trustee, LLC** is a Wyoming limited liability company with its
principal place of business in Cheyenne, Wyoming.  Young formed Guardians Trustee in 2014,
and he is Guardians Trustee's only member and owner.  Guardians Trustee operated the
www.PerfectLight.us website (the "Website") and disseminated other offering materials for the
PBF program.

### IV.   FACTS

**A.     Defendants Offered Securities in the PBF Program.**

12.     Young organized Guardians Trustee in 2014 and began to develop the structure of
the PBF program in early 2015.  Defendants offered investments in the PBF program from
approximately November 2016 through February 2018.

13.     Defendants offered the PBF program only to members of PerfectGift.org
("PGO"), an online, for-profit ministry incorporated in Wyoming in 2014.  The PGO ministry is
primarily directed toward, Asian-American and Asian Christians.

14.     To participate in the PBF program, Defendants invited PGO members to place
money in an irrevocable inter-vivos life insurance trust ("ILIT") with the investor and Guardians
Trustee serving as co-trustees.  The Defendants represented that these funds would then be
placed in the PBF program to generate returns.

4

15.     The investments Defendants offered were securities in the form of investment contracts.  The investments involved investments of money from PGO members, in a common enterprise with others for an investment purpose.  Defendants promised investors that their returns would be generated from the efforts of Young and others through the PBF program.

16.     Defendants used a variety of written materials, including the www.Perfectlight.us website, trust creation documents, and "bond trust indenture operating agreements" (collectively, the "Offering Materials") to describe the PBF program and inform investors about the offering, the safety of investor funds, and promised returns.  Young drafted, posted on the Internet, mailed, and emailed the Offering Materials using means of interstate commerce.

17.     Young exercised ultimate authority over all statements made in the Offering Materials, which were issued in the name of Guardians Trustee.  Young also knew and understood the content of all of the information that the Defendants included in the Offering Materials.  Young is Guardians Trustee's only principal, and his actions are imputed to Guardians Trustee.

18.     Defendants published the Website starting in June 2017.  Prior to June 2017, Defendants promoted the PBF program through Young's in-person meetings with individuals or small groups of prospective investors.  During these meetings, Young provided verbal descriptions of the program and written examples of its alleged wealth-building process.  He also sent written information to prospective investors via email and provided the other Offering Materials to at least some potential investors who were interested in the program.

19.     Defendants raised at least $170,000 from the offering.  Defendants directed all of these funds into Guardians Trustee bank accounts controlled by Young.  These funds were deposited via electronic funds transfer systems using means of interstate commerce.

**B.     Defendants Made False and Misleading Statements About the PBF Program's Operation, Safety, and Use of Funds and Failed to Disclose Young's Criminal and Disciplinary Background.**

20.     In the Offering Materials, Defendants represented that the funds investors used to capitalize an ILIT would be "hypothecated" (loaned) by Guardians Trustee to the PBF program. The PBF would then engage in bank-like activities to generate income, including making loans to other PBF program participants.

21.     Also in the Offering Materials, Defendants represented that income from these activities would then be available to the investor in the form of a revolving line of credit ("RLOC"), allowing the investor to access 400% of the amount of funds the investor contributed to the trust.  Defendants represented that investors would be required to repay their draws from the RLOC, but that each payment an investor made would also increase the amount of funds available to the investor by four times the amount of the payment.

22.     Defendants further represented in the Offering Materials that investors' funds were safe and would be indemnified against loss through the operation of the "US Legal Reserve."  Defendants described this purported reserve as a Federal Reserve-like entity that guarantees the payment of life insurance claims.

23.     Defendants used complex and confusing language to hide the lack of substance to their investment program.  In reality, Defendants did not have the means to use PBF program activities to generate 400% returns, or to use any insurance reserve fund to secure investor monies that were invested in the PBF program.

24.     For example, Defendants made the following statements about the operation of the PBF program on the Website.  The other Offering Materials made similar representations.

a. "The PBF has "developed and utilizes a series of proprietary, highly sophisticated mathematical algorithms that match hypothecated capital assets with long term liabilities. . . held with a separate Equity Depository Trust."

b. "The core component of the PBF is a unique Credit Facility that has the effect of placing capital in motion, initiating a process called Continuous Capital Formation."

c. "This mechanism is "combined with Aggregation of solid, unwavering Collateral supported by the US Legal Reserve to provide an entirely new class of monetary assets, called Collateral Based Assets, offered exclusively through PBF Capital Reserve System."

25.     On the Website, Defendants also described the returns available to investors as follows. The other Offering Materials made similar representations.

a. "The PBF Credit Facility drives the PBF mechanism. As new capital (cash) is deployed, Capital Reserves are established. The Credit Facility is subsequently able to provide leverage of these funds equal to 400% of the Capital Reserves. A minimum of $4,000 (cash) of new initial capital is required to start the PBF Continuous Capital Process."

b. "Thus, a $4,000 new initial Capital contribution yields a $16,000 Credit Reserve" accessible to the investor in the form of a revolving line of credit.

c. "[A] Credit Asset is equal to four times the cash value of the Capital Asset (cash)."

d. "[C]redit Assets allow consumption of good and services and the building of capital wealth, measured in US Dollars, through the surplus of Credit Assets (400%) over and above the more limited cash value (100%)."

26.     On the Website, Defendants summarized the PBF program as follows. The other Offering Materials made similar representations.

In short, money is being employed by the Co-Trustee such that capital is constantly being created and recreated, as he or she elects to engage in the process of Continuous Capital Formation, and ultimately unlimited Disposable Cash Flow. As a result, the ILIT continues to grow Assets, and the Assets are under the legal and financial protection of the Trust at all times, while being indemnified against loss . . . through the Collateral Based Assets backed by the US Legal Reserve.

27.     In fact, contrary to Defendants' representations in the Offering Materials, the PBF program did not engage in any activities to generate income and could not have generated the promised 400% returns.

28.     In addition, contrary to Defendants' representations in the Offering Materials, Defendants did not use investor funds for investment purposes. Instead, Defendants misappropriated all funds, using the money to pay for Young's personal expenses and travel, for the back child support obligations of another individual, and for start-up costs for an unrelated entity controlled by that individual. Defendants did not disclose any of these uses of investor funds.

29.     Furthermore, contrary to Defendants' representations in the Offering Materials, the funds investors placed in the program were not safe or guaranteed through any reserve fund. Investors lost all of the money they invested.

30.     In addition, despite touting on the Guardians Trustee website Young's "many years of experience in the Insurance, Investment, and Commercial Banking Industries[,]" Defendants did not disclose in any of the Offering Materials the prior criminal and regulatory disciplinary actions against Young – all of which were known to Defendants – which include the following:

      a.  In 2015, Young was convicted in Indiana of felony insurance fraud, forgery and theft for a scheme in which he unlawfully used another person's identity to sell insurance products and misappropriate the commissions from those sales. He served approximately 30 days in jail as a result of that conviction.

      b.  In 2010, Young was found liable by the Indiana Securities Division of the Department of State for securities fraud in connection with the sale of

unregistered securities. Young was permanently barred from the securities industry in Indiana, ordered to repay investors over $186,000 and assessed a $25,000 civil penalty. To date, Young has not paid any of the ordered restitution or penalty.

c. In 2011, Young had his license to sell insurance in Indiana permanently revoked by the Indiana Commissioner of Insurance for engaging in the sale of insurance and trusts through the use of fraudulent and dishonest business practices.

31.     Each of these misrepresentations and omissions would be material to the reasonable investor since each of them related to the fundamental nature of the investment: the use of investors' funds, the means by which Defendants would use investors' funds to generate profits, the returns investors would receive, the safety of their investments, and prior actions against the person responsible for generating investment returns.

32.     Defendants each knew or was reckless in not knowing, and was negligent in not knowing, that the misstatements and omissions in the Offering Materials were materially false and misleading.

**C.     Defendants Engaged in Fraudulent Acts, Practices, Courses of Business, and a Scheme to Defraud Investors.**

33.     From at least November 2016 through February 2018, Defendants engaged in fraudulent acts, practices, courses of business, and a scheme to defraud investors in the PBF program.

34.     Defendants' fraudulent acts, practices, and courses of business, and acts in furtherance of their fraudulent scheme, included, but were not limited to:

a. Drafting and disseminating false and misleading statements about the PBF investment program and using complex and confusing language to mislead

investors about the operation of the program, the returns it would generate, and

Defendants' uses of investment funds;

b. Misappropriating investors' monies for Young's personal use, as well as to pay

the debts of another individual and an entity that individual controlled; and

c. Keeping secret the information about Young's criminal and other history of theft

and fraud, including securities fraud, which information is necessary to make

truthful statements in the Offering Materials describing Young's industry

experience and professional history, and the disclosure of which might alert

investors to the possibility for fraud in this offering.

35.     Defendants' actions in furtherance of the scheme were knowing or reckless and

resulted from Defendants' negligence.

36.     Defendants' fraudulent acts, practices, courses of business, and fraudulent scheme

were material to the reasonable investor because Defendants' conduct related to the fundamental

nature of the investment:  the use of investors' funds, the means by which Defendants would use

investors' funds to generate profits, the returns investors would receive, the safety of their

investments, and prior actions against the person responsible for generating investment returns.

**D.     Defendants' Offering was Unregistered and not Exempt from Registration.**

37.     From approximately November 2016 through February 2018, Defendants offered

and sold interests in the PBF program, which were investment contracts and therefore securities.

38.     Defendants offered and sold PBF program investment contracts when no

registration statement was filed or in effect for the transactions.  Defendants raised at least

$170,000 from ten investors in multiple states in the PBF investment contract offering.  No

exemption from registration was available for this offering.

39.    Defendants offered and sold PBF program investment contracts to investors using the means or instruments of interstate commerce including but not limited to telephones, the Internet, and the mails.

40.    Defendants offered and sold PBF program investment contracts to some unaccredited investors.  Neither of the Defendants had a reasonable basis to believe that all PBF program investment contracts investors were accredited.

41.    Defendant Young cannot rely on any Regulation D exemption under the Securities Act due to his 2015 felony conviction.

## V.    CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
#### Fraud in the Offer or Sale of Securities
#### Violations of Securities Act Section 17(a) [15 U.S.C. § 77q(a)]

42.    Paragraphs 1 through 41 are re-alleged and incorporated herein by reference.

43.    Defendants Guardians Trustee and Young, directly or indirectly, in the offer and sale of securities, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails: (a) employed a device, scheme or artifice to defraud with scienter; (b) obtained money or property by means of untrue statements of material fact or by omitting to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices, or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

44.    By reason of the foregoing, Defendants Guardians Trustee and Young violated, and unless enjoined will continue to violate, Section 17(a) of the Securities Act [15 U.S.C. §§ 77q(a)].

## SECOND CLAIM FOR RELIEF
### Fraud in the Purchase or Sale of Securities
### Violations of Exchange Act Section 10(b) and Rule 10b-5
### [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]

45.     Paragraphs 1 through 41 are re-alleged and incorporated herein by reference.

46.     Defendants Guardians Trustee and Young, directly or indirectly, with scienter, by use of the means or instruments of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security: (a) employed devices, schemes or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices or courses of business which operated or would have operated as a fraud or deceit upon any person.

47.     By reason of the foregoing, Defendants Guardians Trustee and Young violated, and unless enjoined will continue to violate, Section 10(b) of the Securities Exchange Act of 1934 [15 U.S.C. 78j(b)], and Rule 10b-5(a) and (c) thereunder [17 C.F.R. § 240.10b-5].

## THIRD CLAIM FOR RELIEF
### Offer and Sale of Unregistered Securities
### Violations of Securities Act Sections 5(a) and 5(c)
### [15 U.S.C. §§ 77e(a) and 77(e)(c)]

48.     Paragraphs 1 through 41 are re-alleged and incorporated herein by reference.

49.     By their conduct as alleged above, Defendants, directly or indirectly, singly or in concert with others, (i) made use of means or instruments of transportation or communication in interstate commerce or of the mails, to sell, though the use or medium of a prospectus or otherwise, securities as to which no registration statement was in effect; (ii) for the purpose of sale or delivery after sale, carried or caused to be carried through the mails or in interstate commerce, by any means or instruments of transportation, securities as to which no registration

was in effect; and (iii) made use of any means or instruments of transportation or communication

in interstate commerce or of the mails to offer to sell or offer to buy, through the use or medium

of a prospectus or otherwise, securities as to which no registration statement had been filed.

50.     No valid registration statement was filed or was in effect with the Commission in

connection with the Defendants offer or sale of securities.

51.     By engaging in this conduct, Defendants violated, and unless enjoined will

continue to violate, Sections 5(a) and 5(c) of the Securities act [15 U.S.C. §§ 77e(a) and

77(e)(c)].

## VI.    PRAYER FOR RELIEF

WHEREFORE, the SEC respectfully requests that the Court:

52.     Find that each of the Defendants committed the violations alleged in this

Complaint;

53.     Enter an Injunction, in a form consistent with Rule 65(d) of the Federal Rules of

Civil Procedure, temporarily, preliminarily, and permanently restraining and enjoining each of

the Defendants from violating the laws and rules alleged against them in this Complaint;

54.     Enter an injunction, in a form consistent with Rule 65(d) of the Federal Rules of

Civil Procedure, temporarily, preliminarily, and permanently restraining and enjoining

Defendant Young from directly or indirectly, including, but not limited to, through any entity

owned or controlled by Young, participating in the issuance, purchase, offer, or sale of any

security; provided, however, that such injunction shall not prevent Young from purchasing or

selling securities for his own personal account;

55.     Order that each of the Defendants, on a joint and several basis, disgorge any and

all ill-gotten gains, together with pre-judgment and post-judgment interest, derived from the

activities set forth in this Complaint;

56.     Order that each of the Defendants pay civil money penalties pursuant to Section

20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15

U.S.C. § 78u(d)]; and

57.     Grant such other relief as this Court may deem just or appropriate.

Respectfully submitted this 11th day of July, 2018.

BY:     _____

DANIELLE R. VOORHEES (CO Bar No. 35929)
Attorney for Plaintiff
Securities and Exchange Commission
Denver Regional Office
1961 Stout Street, Suite 1700
Denver, Colorado 80294
Telephone: (303) 844-1000
voorheesd@sec.gov
(*Pro hac vice pending*)

MARK A. KLAASSEN
United States Attorney

BY:     _____

NICHOLAS VASSALLO (WY Bar No. 5-2443)
Assistant United States Attorney
United States Attorney's Office
P.O. Box 668
Cheyenne, WY  82003-0668
Telephone: 307-772-2124
nick.vassallo@usdoj.gov

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on July 11, 2018, a copy of the **COMPLAINT** was

filed with the Court's CM/ECF system, which will send a notice of electronic filing to counsel of

record, and was provided to counsel for the Defendants via email and U.S. Mail at the following

address:

Bruce A. Butcher
BW Law, Ltd. PS
Suite 4400 Safeco Plaza, 1001 Fourth Avenue
Seattle WA  98154
bbutcher@bwnet.com


_____
United States Attorney's Office